# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

JOE BALTAS,      :
  Plaintiff,     :  CIVIL ACTION NO.
          :  3:20cv1177 (MPS)
  v.       :
          :
DAVID MAIGA, in his individual and official :
capacities, ROLLIN COOK, in his individual :
and official capacities, ANGEL QUIROS, in his:
individual and official capacities, JACLYN :
OSDEN, in her individual and official  :
capacities, and JESSICA SANDLER, in her :
individual and official capacities,   :
  Defendants.     :

## INITIAL REVIEW ORDER OF AMENDED COMPLAINT AND RULING ON DEFENDANTS' MOTION TO DISMISS

The plaintiff, Joe Baltas, is incarcerated at the Red Onion State Prison ("Red Onion") in Pound, Virginia. He has filed a civil rights complaint under 42 U.S.C. § 1983 against former Commissioner Rollin Cook, District Administrator Angel Quiros, Director of Offender Classification and Population Management David Maiga, Correctional Counselor Supervisor Jaclyn Osden, and Correctional Counselor Jessica Sandler. *See* Compl., ECF No. 1, at 1-6. His complaint alleges constitutional violations related to his transfer to Virginia and the conditions of his confinement in Virginia.

In an initial review order dated October 26, 2020, the court concluded that Baltas could proceed on his First Amendment retaliation claims against Cook and Maiga in their individual capacities; his First Amendment claims based on his right to free flow of incoming and outgoing mail, legal mail, right to publications/information, and access to the courts against Cook, Maiga, Angel Quiros, Osden and Sandler in their individual capacities; his Sixth Amendment claims based on his rights to speedy trial and effective assistance of counsel against Cook, Maiga,

Quiros, Osden and Sandler in their individual capacities; his Eighth Amendment claims against Cook, Maiga, Quiros, Osden and Sandler in their individual capacities; and his Fourteenth Amendment claims based on his confinement in administrative segregation without review against Cook, Maiga, Quiros, Osden, and Sandler in their individual capacities. *Baltas v. Maiga*, No. 3:20CV1177 (MPS), 2020 WL 6275224, at *22 (D. Conn. Oct. 26, 2020), Initial Review Order (ECF No. 16 at 46). The court dismissed all other claims without prejudice and afforded Baltas 30 days to file an amended complaint. *Id.*

On January 12, 2021 the Court granted Baltas an extension of time to amend his complaint to address insufficiencies and clarify certain claims and facts as a matter of right under Federal Rule of Civil Procedure 15(a)1(1). ECF No. 43; ECF No. 48. In a Notice of Amended Complaint, Baltas represents that his amended complaint addresses certain deficiencies of his claims and has added additional claims. ECF No. 62. On March 2, 2021, Baltas filed an amended complaint with 228 allegations asserting fifteen claims under Federal statutes 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, and Connecticut state statutory and constitutional violations. [1] Am. Compl. (ECF No. 63). On April 22, 2021, Defendants filed a motion to dismiss the Eighth and Fourteenth Amendment claims pertaining to his transfer to the Virginia DOC, his claims related to the alleged deprivation of state-created liberty interests, and his First Amendment claim of denial of visitation with friends and family. Mot. to Dis. (ECF Nos. 90, 90-1 at 2). Baltas has filed an opposition thereto. ECF No. 97.

The Court has reviewed the amended complaint under 28 U.S.C. § 1915A and does not

---

[1] The court will not address the plausibility of claims under Connecticut law because this initial review for purposes of 28 U.S.C. § 1915A is limited to federal law claims. These claims may be addressed later by Defendants in a motion to dismiss or a motion for summary judgment after issuance of this initial review order.

herein repeat either the legal standard for conducting such review, the provisions or law relevant to the Interstate Compact and Contract claims, nor the allegations set forth in Baltas's amended complaint except as necessary to address any newly plausible claims as appropriate.[2] This initial review order also considers Defendants' arguments made in their motion to dismiss.

## DISCUSSION

In the fifteen counts of his complaint, Baltas asserts (1) violation of the First Amendment and Eighth Amendment under against Maiga, Cook, and Quiros due to their transfer of him to a highly dangerous institution with harsh conditions; (2) Fourth Amendment, Fifth Amendment, and Fourteenth Amendment violations against all Defendants based on seizure of his property; (3) First, Fourth, Fifth, Eighth and Fourteenth Amendment violations by transferring him to Virginia with deliberate indifference to the highly restrictive, harsh, hostile and dangerous environment of the Virginia prison; (4) deprivation of his state-created liberty interests under the Interstate Compact and Contract, Connecticut statutory law, and Connecticut DOC Administrative Directives, Connecticut State Agency Regulations and the Administrative Procedure Act ("APA"),[3] which has resulted in violation of his First, Fourth, Sixth, Eighth and Fourteenth Amendment rights; (5) violation of the First Amendment by depriving him of his freedom of association and access to mail; (6) violation of his First, Sixth and Fourteenth Amendment rights to communication and access to counsel, access to state agencies and ability

---

[2]  The facts and standards from the court's prior initial review order are incorporated herein by reference.

[3]  Baltas has alleged in places violation of the APA. However, he cannot assert a claim under the federal APA, which applies only to federal agencies. *See* 5 U.S.C. § 551 (defining agency). Further, even if he is claiming a violation of the state Uniform Administrative Procedure Act ("UAPA"), Connecticut General Statute § 4-166, his claims are not cognizable because the UAPA does not apply to DOC's Administrative Directives under Connecticut law. "The directives 'are created for the internal management of the correctional institutions and are not regulations that are subject to the [Uniform Administrative Procedure Act ("UAPA")] requirements.'" *Cooke v. Deschaine*, No.

to petition the government for redress of grievances, access to the courts, right to speedy trial, and effective assistance of counsel; (7) violation of the Fourteenth Amendment Equal Protection Clause; (8 and 9) violation of the Eighth Amendment due to deliberate indifference to his health and safety; (10) violation of the Eighth Amendment by subjecting him to cruel and unusual punishment due to in humane treatment, deprivation of basic human needs, and long-term indefinite segregation/solitary confinement; (11) violation of the Eighth and Fourteenth Amendment based on subjecting him to long term solitary confinement without due process; (12) violation of the Fourteenth Amendment and deprivation of the protections under the APA due to Defendants' creation and allowance of customs and procedures; (13) violation of Fourteenth Amendment due process, First, Fourth, and Fifth Amendments and violation of the Interstate Compact Contract in connection with disciplinary hearings; and (14) supervisory liability on the basis of failure to supervise subordinates who subjected him to violation of his rights.

### A. Supervisory Liability

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). Thus, to "hold a state official liable under § 1983, a plaintiff must plead and prove the

3:16-CV-138 (SRU), 2017 WL 1628400, at *4 (D. Conn. Apr. 28, 2017) (quoting *Pierce v. Lantz*, 113 Conn. App. 98, 104–05, *cert. denied*, 293 Conn. 915 (2009)).

elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a constitutional violation "must be established against the supervisory official directly."). Accordingly, Baltas cannot hold a supervisory defendant liable for damages based on a violation of his rights due to a failure to supervise alone. The court will only consider Baltas's claims for damages against a defendant to be plausible if he has alleged the direct personal involvement of that defendant in the alleged constitutional violation.

### B. Fifth Amendment Claims

Baltas has asserted Fifth Amendment violations. Generally, the Fifth Amendment Due Process Clause applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ambrose v. City of New York*, 623 F. Supp.2d 454, 466–67 (S.D.N.Y. 2009). As Baltas has not alleged that a federal official violated his Fifth Amendment rights and he has not alleged facts to indicate a violation of any provision of the Fifth Amendment, Baltas' Fifth Amendment claims must be dismissed.[4]

### C. Transfer to the Confinement in Virginia[5]

The court's prior initial review permitted Baltas's First Amendment retaliation claim

---

[4] The Court also notes that the Supreme Court has instructed that, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998) (quotation marks omitted).

[5] Both Baltas's first and third causes of action allege violation of his First, Eighth and Fourteenth Amendment rights. To the extent Baltas alleges that his Fourth Amendment rights were violated as a result of his transfer in his third cause of action, any such claim is not plausible. The Fourth Amendment protects against unreasonable government search and seizure and governs a claim arising from excessive force used in connection with an arrest. *Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002) ("The Fourth Amendment is not the proper source of [the plaintiff]'s constitutional right because [the defendant]'s objectionable conduct occurred outside of a criminal investigation or other form of governmental investigation or activity."). Baltas's allegations do not suggest that the Defendants' conduct was part of a criminal investigation or any other form of governmental search

based on his transfer to the Red Onion to proceed. The court noted that Baltas had not alleged facts suggesting that his transfer to Massachusetts imposed more restrictive conditions upon him than his Connecticut confinement and thereby constituted adverse action. ECF No. 16 at 15 n.6. Upon review of the amended complaint, the court will permit Baltas's First Amendment retaliation claim to proceed based on his transfer to Virginia against Maiga, Cook and Quiros, who were plausibly involved in the retaliatory transfer.

The court previously dismissed Baltas's Fourteenth and Eighth Amendment claims arising from his transfer to confinement in Virginia with harsh, dangerous and "violative" confinement conditions because an inmate has no Eighth or Fourteenth Amendment right to be confined at a particular prison facility. ECF No. 16 at 16-18 (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules") (other citations omitted)). Moreover, the court considered whether Baltas had plausibly alleged that his transfer was made with deliberate indifference to his health or safety in violation of the Eighth Amendment, but it determined that Baltas had not provided any non-conclusory allegations suggesting that any defendant knew or was aware that Baltas would be subjected to conditions that posed a risk of harm by transferring him to confinement in Virginia. ECF No. 16 at 18.

---

or investigation. Thus, Baltas's claims under the Fourth Amendment arising from his transfer are not plausible and must be dismissed.

As an initial matter, the court will dismiss Baltas's Fourteenth Amendment claim because he cannot plausibly assert a liberty interest in being housed in a particular facility. *See id.* at 17 (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) and other cases). Thus, the motion to dismiss will be granted as to this Fourteenth Amendment claim. Defendants also argue for dismissal of Baltas's Eighth Amendment claim. Baltas has submitted exhibits indicating that a Human Rights Watch report raised concerns about the Red Onion in 1999, and Amnesty noted human rights violation in 2001. *Id.* at ex. 11 (pp. 93-100). In addition, he alleges that the Connecticut Commission on Human Rights and Opportunities observed unconstitutional conditions of confinement in Virginia more than twenty years ago, and that the DOC had announced in 2004 that it would not send prisoners to Virginia in the future. *Id.* at ¶ 140 (citing *Sadler v. Rowland*, No. 3:01CV1786(CFD)(WIG), 2004 WL 2061518, at *4 (D. Conn. Sept. 13, 2004) (Connecticut DOC has recently announced that it will not send prisoners to Virginia in the future)). These general allegations – from over 15 years or more before Baltas was sent to Red Onion – are not sufficient to raise an inference that these Defendants were aware of harsh conditions in Virginia at the relevant time or that he would be exposed to a risk of harm due to his transfer. An eighth amendment claim must allege facts showing that each defendant was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm existed," and that each defendant also "drew the inference." *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003)(internal quotation marks and alteration omitted). The amended complaint – even with the allegations of general information about conditions at Red Onion from years ago – fails to do that. The motion to dismiss the Eighth Amendment claim will be granted.

   **D.     Seizure of Property in violation of the Fourth and Fourteenth Amendments**

In his second count, Baltas complains Defendants are all liable for seizure and withholding of his property in violation of his Fourth and Fourteenth Amendment rights. In his amended complaint, Baltas maintains that Maiga issued an order to transporting staff to seize Baltas's property, hold it in Connecticut and only transport Baltas's legal papers, religious property, and medication. ECF No. 63 at ¶ 30. He alleges further that he was provided with a small portion of his property, but the Virginia officials seized and withheld certain property, including his television, footwear, consumables and other electronics. *Id.* at ¶¶ 79, 81. The Virginia officials provided written notice of his seized property and indicated it would be returned to him upon his return to Connecticut. *Id.* at ¶ 82.

On prior initial review, the court held that Baltas had failed to state a plausible property seizure under the Fourth Amendment because his property seizure claim is not covered under the Fourth Amendment. ECF No. 16 at 18-19 (citing *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). For the same reason, Baltas has failed to raise a plausible Fourth Amendment claim in his amended complaint.

 With respect to his asserted property deprivation under the Fourteenth Amendment Due Process Clause, a prisoner can state a due process claim for loss of property if the state has not created adequate post-deprivation remedies. *See Edwards v. Erfe*, 588 Fed. App'x 79, 80 (2d. Cir. 2015); *Hudson*, 468 U.S. at 533 (1984). "The existence of state remedies, therefore, determines whether a Fourteenth Amendment claim for deprivation of property without due process is cognizable in federal court." *Conquistador v. Hannah*, No. 3:19-CV-1293 (KAD), 2019 WL 4346346, at *4 (D. Conn. Sept. 12, 2019). This court previously dismissed Baltas' Fourteenth Amendment claims because he must avail himself of the adequate remedies

guaranteed under state law. ECF No. 16 at 19-21 (noting Baltas has adequate post-deprivation remedies in either Virginia or Connecticut with regard to his property deprivation.).

In his amended complaint, Baltas has still not shown that he has inadequate post-deprivation remedies in either Virginia or Connecticut with regard to his property deprivation. Indeed, the Western District of Virginia recently dismissed Baltas' property deprivation claim because the Virginia Tort Claims Act adequately provides for this remedy in Virginia. *See Baltas v. Clarke*, No. 7:20CV00276, 2021 WL 1080516, at *24 (W.D. Va. Mar. 18, 2021); s*ee also Barbour v. Wheeler*, No. 7:10-cv-00089, 2010 WL 1816625, at *1 (W.D. Va. Apr. 30, 2010) (prisoner had remedy under VTCA). Likewise, the State of Connecticut provides a remedy for lost or destroyed property. Under Connecticut General Statutes § 4-141, *et seq.*, a prisoner may bring a claim against the Connecticut Claims Commission, unless there is another administrative remedy for his claim. *See* Conn. Gen. Stat. § 4-142. Thus, Baltas cannot state a plausible Fourteenth Amendment property deprivation claim.

### E. Deprivation of State Created Liberty Interests

On prior initial review, the court held that Baltas did not established that the Compact constitutes a federal law or that he retains a state-created liberty interest under the Compact, Contract or Connecticut DOC Administrative Directives. ECF No. 16 at 21-23. The court indicated, however, that it would consider whether Baltas has stated any plausible claims of constitutional violation against Defendants as a result of his incarceration in Virginia while he remained under Connecticut DOC jurisdiction. *Id.* at 23.

In his amended complaint, Baltas claims that Defendants deprived him of "state created liberty interests granted to him through statute, compact contract and Ad Dir.'s and Title 18 of

Connecticut State Agency Regulations, and the APA." ECF No. 63 at ¶ 180. Baltas asserts that Defendants transferred him to Virginia in violation of the substantive limitations on their discretion under Interstate Corrections Compact. *Id.* at ¶ 181. However, as argued by defendants in their motion to dismiss, Baltas has failed to identify any regulation or statute imposing limitations on Connecticut DOC's discretion to transfer him out of state. ECF No. 90-1 at 7.

Moreover, the court concludes that Baltas's amended allegations fail to provide any reason for this court to alter its determination that a violation of the Connecticut Interstate Correction Compact does not constitute a federal claim under 42 U.S.C. § 1983. *See Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006) ("we agree with the district court's conclusion that violations of the ICC are not violations of federal law, and therefore are not actionable under § 1983."); *Ghana v. Pearce,* 159 F.3d 1206, 1208 (9th Cir. 1998) ("the Compact is not federal law and does not create a constitutionally protected liberty interest" for purposes of Section 1983); *Stewart v. McManus,* 924 F.2d 138, 142 (8th Cir. 1991) "(We also agree that no evidence exists that Congress has approved the Interstate Corrections Compact. Accordingly, we affirm the district court's ruling that the Interstate Corrections Compact has not been transformed into federal law, and therefore, cannot be a basis for Stewart's 42 U.S.C. § 1983 claim."); *see also Archy v. Troxler*, No. CV 20-1030-RGA, 2021 WL 75739, at *4 (D. Del. Jan. 8, 2021) ("The Interstate Corrections Compact is not a federal law and, therefore, Plaintiff cannot rely upon 42 U.S.C. § 1983 to assert a claim based upon an alleged violation of the Interstate Corrections Compact.").

Likewise, "[s]tate prison directives do not confer any constitutionally protected rights on inmates." *Riddick v. Chevalier*, No. 3:11CV1555 SRU, 2013 WL 4823153, at *4 (D. Conn. Sept.

9, 2013) (*citing Sandin v. Conner,* 515 U.S. 472, 481–82 (1995) (prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates)); *Taylor v. Levesque*, No. 3:03CV1347(HBF), 2005 WL 3050973, at *2 (D. Conn. Nov. 10, 2005), *aff'd*, 246 F. App'x 772 (2d Cir. 2007) ("An inmate's right to have relevant laws, regulations and directives obeyed is not a federal right protected by the civil rights statute or the Constitution.").

Accordingly, for the reasons articulated in its prior initial review order, the court must dismiss Baltas' this claim, although the court will still consider whether Baltas has raised any plausible claims of constitutional violation arising from his incarceration in Virginia while he remained under Connecticut DOC jurisdiction.

### F.     Visitation

Baltas alleges that the decision to transfer him to Virginia has resulted in depriving him of all communication and association with family, friends and peers because of the hardship of travel. ECF No. 63 at ¶ 188. The Supreme Court has observed that "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). The court previously dismissed Baltas's right to association claim because no facts raised an inference that limitations on his visitation with family and friends during his incarceration in Virginia were not reasonably related to legitimate penological goals. ECF No. 16 at 24 (citing *Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *13 (S.D.N.Y. Sept. 26, 2019) (noting a prisoner's constitutional right is not violated by limitations on visitation if the procedure "bear[s] a rational relation to legitimate penological interests.").

Defendants seek dismissal of this claim because Baltas's allegations asserting denial of his visitation rights "due to the hardship of travel" fail to state a claim. ECF No. 90-1 at 9. The court agrees. Baltas' claim that his incarceration in Virginia infringes upon his right to association due to the hardship of travel for his friends, family and peers is not plausible as Defendants are not alleged to have prohibited his visitation with these individuals. *See Baltas v. Clarke*, No. 7:20CV00276, 2021 WL 1080516, at *25 (dismissing similar right to association deprivation claim that Baltas's "friends, family and associates" from Connecticut are unable to visit him in Virginia because Baltas had not alleged that official had not permitted these individuals to visit him.). Thus, Baltas has not raised a plausible claim of violation of his First Amendment right to freedom of association.

G.      **Social and Legal Mail Interference, Access to the Courts and State Agencies, Right to Petition, Ability to Litigate, and Speedy Trial**

Baltas alleges violation of his First, Sixth, and Fourteenth Amendment rights due to interference with his mail and his communications and access to his legal counsel. *See* ECF No. 63 at ¶¶188, 189; *see id.* at ¶¶ 45-46, 49, 50-59, 65-66, 91-97. Baltas asserts that he should be managed according to the Connecticut DOC, rather than the Virginia DOC, regulations and directives. *See* ECF No. 63 at ¶ 49, 69, 108. He alleges further that Defendants refused to have him transported to Connecticut so that he could appear for his habeas matter in February, March, and June 2020, and he is only permitted to attend court proceedings through video conferencing while he is shackled and handcuffed to a security chair, which makes it impossible to write, sort papers or represent himself. ECF No. 63 at ¶¶ 121, 161.

The court previously permitted Baltas's alleged deprivations of mail interference, access to the courts, effective assistance of counsel and speedy trial to proceed on prior initial review.

ECF No 16 at 26-32. Baltas's First, Fourteenth, and Sixth Amendment claims concerning his mail, access to telephone and other electronic conferencing devices, ability to litigate, exercise of his right to petition, and delay in his legal proceedings arise from Baltas' view that he should not be subjected to the Virginia DOC regulations but rather to the Connecticut DOC administrative directives, and that applying the Virginia regulations results in a violation of his constitutional rights. As explained in the court's prior initial review order, Baltas is subject to the authority of law and regulations of Virginia during his incarceration in Virginia. ECF No. 16 at 35; *see also Baltas v. Clarke*, No. 7:20CV00276, 2021 WL 1080516, at *14 (noting "that many of Baltas's issues with his confinement in Virginia arise from his mistaken understanding that he is not subject to the policies and regulations of the VDOC," but "while in the custody of the VDOC, Baltas is subject to all the provisions of law and regulations' applicable to other inmates in Virginia." (internal quotation marks omitted)).[6] However, Baltas' claims still require this court's consideration of whether the Virginia DOC regulations are constitutionally deficient. *See Ghana*, 159 F.3d at 1209 (considering whether plaintiff who was transferred from New Jersey to Oregon was subjected to a Fourteenth Amendment due process violation because the Oregon disciplinary procedure "were so deficient as to violate due process of their own accord."). For initial pleading purposes, the court will permit these claims to proceed for further development.[7]

---

[6] The district court of the Western District of Virginia also observed that Baltas had not sufficiently alleged a facial challenge to the mail policy as unconstitutional. *Id*. ("Baltas cannot manufacture constitutional claims simply by withholding his consent to a valid policy and then complaining that he is not receiving his mail.").

[7] The First Amendment protects an individual's right to petition the government for redress of grievances. Inmates, however, have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick*, 731 F. App'x at 13 (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures'"). Thus, to the extent that Baltas claims denial of his right to petition based on any barrier to his filing prison administrative grievances, the court must dismiss this claim as not plausible.

### H.     Equal Protection Violation

In his seventh cause of action, Baltas asserts violation of his Fourteenth Amendment right to equal protection. He maintains that Defendants are treating him differently than other Connecticut prisoners who are not deprived of the protections of Connecticut law, regulation and directives. ECF No. 63 at ¶ 196. He states that he is similarly situated to prisoners in Connecticut and not to prisoners in Virginia because he cannot be safely housed with Virginia inmates. *Id.* at ¶ 197. He maintains that he is being treated differently by Virginia DOC because he is an out-of-state Connecticut prisoner. *Id.* at ¶ 154. He also explains that he is raising a class of one claim based on Defendants' decision to transfer him out of state to an adverse location while housing identical men such as inmates Barietta and Trabakoulous in Connecticut. *Id.* at ¶ 198.

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in

treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Baltas has not alleged a membership in a suspect classification because prisoners in general are not a suspect class. *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012). Thus, Baltas is proceeding under a class of one theory and must demonstrate the existence of a person who is "prima facie identical" to him and who was treated differently. *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal quotation marks and citation omitted).

Baltas has not plausibly alleged facts showing that all prisoners housed in Connecticut are so similar to him so as to raise an inference that his different treatment in Virginia lacks any reasonable nexus with legitimate governmental policy. To the extent that Baltas alleges an equal protection claim based on Virginia DOC staff treating him differently than other Virginia prisoners, this claim also fails because he has not alleged any facts showing that all Virginia inmates are so similar to him as to raise an inference of disparate treatment.

However, he has named two Connecticut prisoners as comparators, who are currently housed in Connecticut but are sentenced to life, and who have a history of chronic discipline,

administrative segregation, multiple profiles, and disciplinary histories including assaults on staff and inmates, gang influences. For purposes of initial review, the court will permit Baltas' equal protection claim based on his transfer to Virginia while two comparator inmates remain housed in Connecticut to proceed for further development.

## I.     Eighth Amendment

In his amended eighth, ninth and tenth causes of action, Baltas asserts violation of the Eighth Amendment. ECF No. 63 at pp. 51-55. In his eighth count, he alleges that Defendants have acted with deliberate indifference to his safety and failed to protect him from serious physical injuries, mental and emotional traumas, and irreparable harms resulting from his incarceration at the Red Onion. *Id.* at ¶ 202. In his ninth count, he alleges that Defendants acted with deliberate indifference to the threat of serious assault and his indefinite confinement in segregation. *Id.* at ¶ 205. In his tenth cause of action, Baltas alleges that Defendants have subjected him to cruel and unusual punishment and deprivations of his basic human needs in violation of the Eighth Amendment. *Id.* at ¶ 157.

On prior initial review, the court concluded that Baltas had alleged plausible Eighth Amendment claims based on facts indicating he was subjected to threats to his physical well-being from staff and inmates at the Red Onion, that he suffered an attack from other inmates, that he sustained a use of force from Virginia correctional staff at a level greater than that tolerated in Connecticut (including attack dogs, tasers, firearms, and routine chemical agent use (*Id.* at ¶ 151)), and that Defendants had notice of such harms but took no action to ensure his safety, although he remained under Connecticut DOC jurisdiction. Baltas' amended complaint has still alleged plausible claims on such bases.

In addition, his amended complaint alleges Eighth Amendment deprivations imposed during his solitary confinement including no social contact or interaction; no visual or environmental stimuli; limited recreation two to three times per week in an enclosed cage (with a concrete floor and lacking equipment) the size of a parking space; no ability to exercise in his cell; six social telephone calls per month; three showers per week; inability to maintain hygiene due to lack of a mirror, haircuts, nail care and only one razor per month; deprivation of adequate ventilation due to a recycling air system; water contaminated by a coal mine in close proximity; use of restraints for movement out of the unit and use of restraints in the unit at staff discretion; inadequate meals; deprivation of religious activities and services; more limitations on commissary, telephone, visits, program or recreation privileges than those imposed on the privileges for the general population; no access to winter clothing; and twenty-four hour lighting. *Id*. at ¶ 144. He alleges that he has suffered these conditions for more than a year and has been housed in solitary confinement in the Red Onion's punitive segregation unit since January 18, 2020, although he is not on Administrative Segregation status. *Id*. at ¶ 147. Baltas alleges further that as a result of his conditions of confinement, he has been diagnosed with PTSD and anxiety requiring medication. *Id*. at ¶ 149. He has suffered from severe depression, lethargy, cognitive decline, and anxiety and panic attack, and he has severe hypertension and therefore these conditions give rise to a serious risk of stroke, heart attack, or death. *Id*.

Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33

(1994) (internal quotation marks and citations omitted). To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). With respect to claims concerning unhealthful conditions, the Second Circuit has rejected "any bright-line durational requirement" for a viable claim[,]" although the court has instructed that whether a claim states a constitutional deprivation "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste).

### 1. Objective Element

The court will first consider whether Baltas has raised any objectively serious conditions that pose a substantial risk of serious harm to his health and well-being.

<u>Isolation/Solitary Confinement</u>

The court concludes that Baltas' allegations that he is subjected to a combination of conditions during his administrative segregation, including indefinite isolation with no opportunity for social contact and interaction, no programs, and limitations on his telephone use and visitation, raises a plausible Eighth Amendment violation. *See Campbell v. Maldanado*, No.

3:19-CV-1430 (SRU), 2020 WL 2558228, at *4 (D. Conn. May 19, 2020) (finding plausible Eighth Amendment claim on initial review based on allegations of ongoing confinement in near-total isolation and, *inter alia*, no contacts visits, or program opportunities or social interaction, and that defendants were aware of his placement).

Lack of Programs and Privileges

Baltas' allegations concerning his lack of program opportunities, telephone limitations, visitation and commissary privileges, standing alone, do not suggest a deprivation of a basic human need. *See Pagan v. Dougherty*, No. 3:18-CV-1668 (VLB), 2019 WL 2616975, at *6-7 (D. Conn. June 26, 2019) (deprivation of phone privileges, visits from friends and family, eligibility for parole, and access to educational and vocational services as well as a limitation on showers to three per week during inmate's confinement on administrative segregation for two years did not state claim of unconstitutional conditions of confinement under Eighth Amendment); *Vega v. Rell*, No. 09-CV-0737, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (It is well established that "[i]nmates have no constitutional right to purchase items from the prison commissary") (citing cases); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (finding no constitutional right to a job in the absence of underlying state law mandating jobs for prisoners).[8] Accordingly, these allegation do not standing alone raise plausible Eighth Amendment deprivations and are dismissed.

---

[8] Baltas alleges that he cannot attend religious services or engage in religious practice in his segregated confinement. ECF No. 63 at ¶ 144 (m). Although Baltas includes this allegation in his description of restrictive conditions of confinement, the court construes it as a claim of First Amendment Free Exercise Clause violation. To state a First Amendment free exercise claim, an inmate is required to make a threshold showing "that the disputed conduct substantially burden[ed] his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006). It remains unresolved in this circuit whether a prisoner must show that the disputed conduct substantially burdened his sincerely held religious beliefs, and district courts within this circuit continue to apply the "substantial burden test" when addressing free exercise claims. *Caves v. Payne*, No. 3:20-CV-15 (KAD), 2020 WL 1676916, at *7 (D. Conn. Apr. 6, 2020) (citing cases and applying "substantial burden test" to inmate's free exercise

<u>Lack of Hygiene</u>

Unsanitary conditions and deprivations of access to facilities to maintain hygiene can give rise to Eighth violations. *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013); *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) ("The failure to regularly provide prisoners with ... toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners constitutes a denial of personal hygiene and sanitary living conditions." (internal quotations marks and citations omitted)).

Baltas' alleged allegations that he is permitted only three showers per week does not suggest a deprivation of a basic human need. *See Bernier v. Sweet*, No. 15-CV-209 (RJA) (HBS), 2018 WL 1047103, at *3 (W.D.N.Y. Feb. 26, 2018) (normal conditions of segregation permitting only two showers per week did not constitute sufficient deprivation under Eighth Amendment). However, for purposes of initial review, the court concludes that Baltas has stated a serious deprivation based on his inability to maintain his hygiene because he was provided with only one razor per month and denied access to a mirror, haircuts and nail care. ECF No. 63 at ¶ 144(h).

<u>Use of Restraints</u>

Baltas has alleged that he was placed in restraints during all of his out-of-cell movement and in his cell at staff discretion. ECF No. 63 at ¶ 144(k). In an Eighth Amendment claim based on the use of restraints, the court should "consider whether the use of restraints was reasonably calculated to restore prison discipline and security and, in that purposive context, whether the officials were deliberately indifferent to [Plaintiff's] health and safety." *Trammell v. Keane*, 338

---

claim). As Baltas has not alleged that this condition substantially burdens his sincerely held religious beliefs, Baltas has not alleged a plausible First Amendment Free Exercise deprivation. *See Holland v. Goord*, 758 F.3d at 220 (assuming without deciding that "a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs" to state a First Amendment free exercise claim) (citations omitted).

F.3d 155, 163 (2d Cir. 2003). As the court cannot determine whether the alleged use of restraints is justified for Baltas, at this stage the court considers Baltas' allegations concerning the use of restraints to raise a plausible risk of harm to his health and well being.

Contaminated Water

The Eighth Amendment requires that prisoners have water that is suitable for drinking and bathing. *Rivera v. Bloomberg*, No. 11 CIV. 4325 PGG, 2012 WL 3655830, at *4 (S.D.N.Y. Aug. 27, 2012). However, Baltas' claims is entirely conclusory. He alleges only that corrections staff do not drink the water and that a closed coal mine is in close proximity to the Red Onion. ECF No. 63 at ¶ 144(j). He provides no factual allegations to raise a plausible basis for his belief that he is exposed to non-potable water. Accordingly, Baltas has failed to plausibly allege that the water at the Red Onion poses a substantial risk of serious harm to his health. *See, e.g., See Vogel v. Smith*, No. 20-CV-6349 (NSR), 2020 WL 5947729, at *3 (S.D.N.Y. Oct. 6, 2020) (dismissing claim of deliberate indifference based on exposure to mold, mildew, insects and sewage due to failure to provide facts showing that conditions put his health or safety at risk); *Govan v. Campbell*, 289 F. Supp. 2d 289, 296 (N.D.N.Y. 2003) ("Govan asserts conditions which 'could have' caused him harm but he fails to assert how he was actually harmed. It may well be that the shower stalls had rust bubbles, that wild birds were permitted to fly within the cells, and that there were cockroach problems, but these conditions do not rise to the level of a constitutional violation). Accordingly, this claim must be dismissed as not plausible.

Meals

"[P]risoners are entitled to nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of

the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted). A key consideration is whether the provision of food ultimately poses an "imminent danger to the inmate's health and well-being." *Harris v. Ashlaw*, No. 9:07-CV-0358 (LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007). Baltas' allegations that he was subjected to spoiled food that did not meet nutritional or serving size standards raise a plausible serious risk of harm to his health and well being. *See* ECF No. ¶ 144(l).

<u>Recycled Air</u>

Poor air quality in a facility for a prolonged period can be an unconstitutional condition of confinement. *See Benjamin v. Fraser*, 343 F.3d 35, 52 (2d Cir. 2003) (affirming constitutional violation of inadequate ventilation at eleven facilities based on "the presence of large numbers of inoperable windows, clogged or dirty ventilation registers and exhaust vents in showers and cells, and poor air quality"); *McTerrell v. Koenigsmann*, No. 1:18-CV-01028 EAW, 2019 WL 2511426, at *12 (W.D.N.Y. June 18, 2019) (citing *Benjamin*).

Baltas alleges inadequate ventilation due to the use of an air system that recycles air and claims that the deprivation of adequate ventilation is exacerbated by the COVID-19 pandemic. ECF No. 63 at ¶ 144(i). However, Baltas' allegations that the air system pumps "intake of 4 connected cells directly to the exhaust" fail to suggest a plausible basis for his belief that he is exposed to a substantial risk of serious harm. Moreover, he provides no factual substantiation for his assertion that his deprivation based on poor ventilation is exacerbated by the COVID-19 pandemic; and he provides no facts indicating that he is likely to contract COVID-19 due to the use of the recycled air system. *See Abreu v. Lipka*, 778 F. App'x 28, 32 (2d Cir. 2019) (summary order) (affirming dismissal of Eighth Amendment conditions of confinement claim because

vague allegations of unpleasant temperatures and unsanitary conditions failed to state the objective component). Accordingly, this claim must be dismissed.

<u>Exercise Deprivation</u>

Exercise is a basic human need protected by the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991). The Second Circuit has recognized that "the Eighth Amendment requires that prison inmates be allowed some out-of-cell exercise." *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996); *Edwards v. Quiros*, 986 F.3d 187, 195 (2d Cir. 2021) (noting that the right at issue is for "some opportunity to exercise"). However, prison officials may limit the right to out-of-cell exercise "where there is a valid safety exception or certain unusual circumstances." *Williams*, 97 F.3d at 704 (holding that segregated confinement for long periods does not violate Eighth Amendment if inmate is provided opportunity for exercise) (citations omitted). The Second Circuit has noted that "neither an occasional day without exercise when weather conditions preclude outdoor activity nor reliance on running, calisthenics, and isometric and aerobic exercises in lieu of games is cruel and unusual punishment." *Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985). However, a plausible Eighth Amendment deprivation may arise where a defendant fails to assure an inmate "the opportunity for meaningful daily outdoor exercise." *McCray v. Lee*, 963 F.3d 110, 118 (2d Cir. 2020) (plaintiff was "denied any meaningful exercise opportunity for four months" because Defendants "refus[ed] to have ice and snow cleared away, leaving more than 75 percent of yard space with snow and ice at waist height[.]").

Here, Baltas alleges that he suffers from a "complete deprivation of opportunity to exercise" as exercise cannot be completed in the cell based on cell size and structure and

"exercise is not possible in the rec cages as no equipment is provided and attempts to exercise on the concrete in sandals would cause injury, nor are the rec opportunities provided regularly". ECF No. 63 at ¶ 144(p). He alleges that he is afforded recreation approximately two to three times per week in an enclosed cage sealed with fiber glass the size of a parking space and subject to cancellation at staff discretion. *Id.* at ¶ 144(e). He alleges further that he was not permitted to leave his cell from April 2020 to September 2020, and he has not been permitted to have outside or out-of-cell recreation since December 18, 2020. *Id.* at ¶¶ 163-164. For initial pleading purposes, Baltas has sufficiently alleged that he was not provided with the meaningful opportunity to exercise while confined in segregation.

### Access to Winter Clothing

An inmate's alleged prolonged exposure to cold temperatures can amount to a constitutional violation. *McFadden v. Noeth*, 827 F. App'x 20, 29 (2d Cir. 2020); *Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001). Generally, plaintiffs have succeeded on Eighth Amendment claims based on exposure to cold temperatures in cases involving "exposure to freezing or near-freezing temperatures for a more prolonged period of time than eleven hours." *Ford v. Aramark,* 2020 WL 377882, at *7 (S.D.N.Y. Jan. 23, 2020). Baltas alleges that he was deprived of winter attire because the Red Onion does not permit sweat pants or thermals and his unit does not permit coats or hats. ECF No. 63 at ¶ 144(o). Because Baltas has not alleged that he has been exposed freezing or near freezing temperatures without adequate clothing, the court concludes that his allegations are insufficient to raise a deprivation of constitutional dimension. This claim must be dismissed as not plausible.

### Twenty-Four-Hour Illumination

Sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment. *Walker*, 717 F.3d at 126; *Tafari v. McCarthy,* 714 F.Supp.2d 317, 367 (N.D.N.Y.2010) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights."). However, an Eighth Amendment claim based on continuous lighting "turn[s] on the degree of illumination, the duration of the inmate's exposure, the extent of harm it causes, and the penological justification for the lighting." *Booker v. Maly,* No. 9:12–CV–246 (NAM/ATB), 2014 WL 1289579, at *18–19 (N.D.N.Y. Mar. 31, 2014).

Baltas alleges that he is subject to twenty-four-hour illumination that causes him sleep deprivation and headaches, eye pain and damage, nausea, stress and extreme anxiety. ECF No. 63 at ¶ 144(p). These allegations are sufficient to raise a plausible Eighth Amendment claim. *See White v. Doe*, No. 3:16-CV-01874 (JAM), 2017 WL 2562845, at *4 (D. Conn. June 13, 2017).

<u>Physical and Mental Health</u>

The Eighth Amendment "forbids" not only "deliberate indifference to serious medical needs of prisoners," but also deliberate indifference to serious "mental health care" needs. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

Baltas alleges further that as a result of his conditions of confinement, he has been diagnosed with PTSD and anxiety requiring medication. ECF No. 63. at ¶ 149. He has allegedly

suffered from severe depression, lethargy, cognitive decline, and anxiety and panic attack, and he

has severe hypertension; and these conditions allegedly give rise to serious risk of stroke, heart

attack, or death. *Id.* For purposes of initial review, the court concludes that Baltas' claims of

physical and mental suffering raise objectively serious medical needs.

### 2. Subjective Element

Baltas has alleged that Defendants were aware of the Red Onion conditions that would

cause him harm and that he made them aware of his conditions of confinement at the Red Onion

through letters and grievances. *Id.* at ¶¶ 141, 148, 166. As his amended complaint indicates that

Defendants failed to take responsive steps to Baltas' complaints, the court concludes that he has

sufficiently alleged that Defendants acted with deliberate indifference to conditions that posed a

substantial risk of serious harm to Baltas. Thus, for purposes of initial review, the court

concludes Baltas has sufficiently alleged that defendants have acted with conscious disregard to

his conditions of: threats and attacks to his physical well-being from staff and inmates; use of

force from Virginia correctional staff at a level greater than that tolerated in Connecticut;

isolating conditions in solitary confinement; deprivation of adequate access to a razor, mirror,

haircuts and nail care to maintain personal hygiene; harmful use of restraints; spoiled food that

did not meet nutritional or serving size standards; meaningful opportunity to exercise; twenty-

four-hour illumination in his cell; and inadequate attention and care for his physical and mental

health.

### J. Fourteenth Amendment Due Process

In his thirteenth cause of action, Baltas alleges that he was subjected to multiple hearings

under the Virginia OPs that denied him access to video evidence as required under Connecticut

DOC Administrative Directive 9.5 that would have proved him innocent, and that he has been subjected to punitive monetary fines in violation of Connecticut law in violation of his procedural due process protections. ECF No. 63 at ¶¶ 130, 220. On prior initial review, the court held that Baltas was not guaranteed access to video evidence in disciplinary hearings under *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). ECF No. 16 at 36. The court must also dismiss Baltas' amended claim as not plausible.

Baltas has also alleged that Defendants have violated his due process rights by failing to conduct reviews of his Connecticut administrative segregation status, but instead retained him as an improperly classified Administrative Segregation status inmate in the Connecticut DOC system. ECF No. 63 at ¶¶ 119, 221. He maintains that had Defendants conducted the mandated reviews of his status, he would have been removed from Administrative Segregation status in the Connecticut system and classified as a Level 4 general population inmate. *Id.* at ¶ 120.

Because due process requires that prison officials engage in periodic review of an inmate's administrative confinement, the court will permit this claim to proceed for further development. *See Proctor v. LeClaire*, 846 F.3d 597, 609-12 (2d Cir. 2017) (quoting *Hewitt*, 459 U.S. at 476).[9]

### K.    42 U.S.C. § 1988

Baltas invokes this court's jurisdiction under 42 U.S.C. § 1988. Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil right cases in conformity with

---

[9]  In *Proctor,* the Second Circuit directed that a periodic review must provide a meaningful evaluation that considers recent conduct in determining whether valid institutional safety reasons justify continued segregation. *Id.* at 610-11. Prison officials cannot merely "go through the motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined in [administrative segregation]

federal law where appropriate, or with state law. 42 U.S.C. § 1988(a). However, Section 1988(a)

does not create an independent cause of action. *See Moor v. Alameda County,* 411 U.S. 693, 702-

06 ("[Section 1988] was obviously intended to do nothing more than to explain the source of law

to be applied in actions brought to enforce the substantive provisions of the [the 1966 Civil

Rights Act].")*, reh'g denied,* 412 U.S. 963 (1973).

Section 1988(b) permits a district court, "in its discretion, [to] allow the prevailing party,

other than the United States, a reasonable attorney's fee as part of the costs" of bringing a lawsuit

under Section 1983 or various other civil rights provisions. 42 U.S.C. § 1988(b). A *pro*

*se* litigant, however, is not entitled to attorneys' fees under section 1988. *See Kay v. Ehrler,* 499

U.S. 432, 435 (1991). Thus, any claims asserted under 42 U.S.C. § 1988 are dismissed. *See* 28

U.S.C. § 1915A(b)(1).

### L.      42 U.S.C. § 1981

The purpose of § 1981 is "to protect from discrimination identifiable classes of people

who are subjected to intentional discrimination because of their ancestry or ethnic

characteristics." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Section 1981(a)

prohibits "intentional racial discrimination" by public or private actors. *Brown v. City of Oneida*,

221 F.3d 329, 339 (2d Cir. 2000).

"To establish a claim under § 1981, a plaintiff must allege facts supporting the following

elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate

on the basis of race; and (3) discrimination concerning one of the statute's enumerated

activities." *Id.*; *see also Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988) (Section

1981 requires that a defendant's actions have been intentionally and purposefully discriminatory,

no matter what the evidence shows." *Id.* at 610.. 28

and plaintiff's race must have been the motivating factor behind the discriminatory act). A plaintiff bringing a Section 1981 claim must allege with specificity "circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). "Conclusory allegations" of racially motivated animus are insufficient. *Id.* Baltas has failed to allege facts plausibly showing any of Defendants took any action that was intentionally racially motivated. Thus, any claim under Section 1981 must be dismissed.

### M.    42 U.S.C. §§ 1985 and 1986

 Baltas also asserts that he brings this action under 42 U.S.C. §§ 185 and 1986. Section 1985 has three subsections. Section 1985(1) relates to conspiracies to prevent federal officials from performing their duties and has relevance to the facts of this case. Section 1985(2) and 1985(3) provide causes of action based on conspiracies intending to violate a plaintiff's civil rights. *Mills v. Noonan*, No. 1:16-CV-00984-MAT, 2017 WL 1353479, at *10 (W.D.N.Y. Apr. 13, 2017). Section 1985(2) concerns conspiracies intending to deter "any party or witness" from participating in state or federal proceedings or to obstruct justice with intent to deny equal protection of the law; and 1985(3) applies to conspiracies to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws, and precedent makes clear that the conspiracy must be motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015).

 To the extent Baltas alleges claims under Sections 1985(2) and (3), he has not alleged a plausible conspiracy. To state a viable conspiracy claim, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express

or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted). The amended complaint contains no allegations indicating a factual basis supporting a meeting of the minds or even a plausible inference that Defendants conspired to violate Baltas' constitutional rights. *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.,* 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (Allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.). Specifically, Baltas not alleged any facts suggesting that Defendants had a meeting of the minds or conspired to deter participation in a court proceeding or to obstruct justice in violation of Section 1985(2). Nor has he alleged that Defendants were acting in furtherance of a conspiracy motivated by racial or other unlawful discrimination in violation of Section 1985(3).

As for any claim under section 1986, it necessarily fails because a violation of section 1986 may proceed only if a plaintiff is able to establish a predicate claim under § 1985.[10] *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000). Accordingly, these claims must be dismissed.

### N.    Official Capacity Claims

---

[10]   Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and, mentioned in section 1985 of this title, are about to be committed and having power to prevent or aid in preventing the commission of same, neglects or refuses to do so...." 42 U.S.C. § 1986.

Baltas' amended complaint includes requests for declaratory and injunctive relief. *See* ECF No. 63 at p. 60. In its prior initial review order, the court explained that Baltas could proceed against Defendants in their official capacities based on allegations of an ongoing constitutional violation, although he could not proceed against Commissioner Cook. ECF No. 16 at 39 (*citing Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

As the court explained, Baltas' official capacity claims may proceed on any claims for injunctive relief based on ongoing constitutional violations against Maiga and Quiros under Federal Rule of Civil Procedure 25(d). ECF No. 16 at 43. These defendants have already been served in this action and Baltas has already filed motions for injunctive relief. *See* ECF Nos. 4, 5, 53.

Baltas also requests the court to prohibit Connecticut from indemnifying punitive damages against Defendants or to order Defendants to pay personally for punitive damages; these requests are not plausible as they do not seek to remedy any ongoing violation of his federal or constitutional rights. *See* ECF No. 63 at p. 60.

As for his requests for declaratory relief, Baltas cannot seek a declaration that the acts and omissions by Defendants have violated his constitutional rights in the past. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* ... to claims for retrospective relief."). Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. Am. Inst. of Certified Pub. Accts.*, C.A. No. 10-CV-2291 (KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). If

Baltas were to prevail on any claim of constitutional violation, the court necessarily would determine that his constitutional rights had been violated. Thus, a separate award of declaratory relief is unnecessary.

## ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

The case shall proceed on Baltas' First Amendment retaliation claims against Rollin Cook, David Maiga, and Angel Quiros in their individual capacities; his First Amendment claims based on his right to free flow of mail, communication with counsel, and access to the courts against Defendants in their individual capacities; his Sixth Amendment claims based on his rights to speedy trial and effective assistance of counsel against Defendants in their individual capacities; his Fourteenth Amendment equal protection claims based on his being transferred to Virginia incarceration while two comparator inmates remain housed in Connecticut; his Eighth Amendment conditions of confinement claims against Defendants in their individual capacities; and his Fourteenth Amendment claims based on continuing Administrative Segregation status in Connecticut without review against Defendants in their individual capacities.

Baltas' official capacity claims based on his claims of ongoing constitutional violations may proceed against Maiga and Quiros. All other claims are dismissed.

The Motion to Dismiss [ECF No. 90] is GRANTED consistent with this order.

As all Defendants have already been served, the court instructs the parties to provide a proposed case management schedule within 21 days of this order's date of issuance.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 1st day of June 2021, at Hartford, Connecticut.