```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JOE BALTAS,                      :
                                 :
     Plaintiff,                  :
                                 :
     v.                          :  CASE NO. 3:20-cv-1177(MPS)
                                 :
DAVID MAIGA et al.,              :
                                 :
     Defendants.                 :
```

**RULING ON PLAINTIFF'S MOTIONS FOR RECONSIDERATION**

Plaintiff, Joe Baltas, has filed two motions relating to this Court's ruling granting in part and denying in part his motions to compel (dkt. #252; dkt. #253). While plaintiff's motions are styled as either motions for reconsideration or objections to the district judge, this Court shall interpret the motions as motions for reconsideration and rule on them. Plaintiff has also filed a notice in response to this Court's ruling denying plaintiff's motion to compel Request for Production No. 10 "with leave for plaintiff to clarify the relevance." (Dkt. #243 at 37; dkt. #251.)

The Court will address each motion in turn.

I.  Standard

Local Rule 7(c) states that motions for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked." D.

1

Conn. L. Civ. R. 7(c).[1] "This standard is 'strict,' and reconsideration should be granted only if 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Lewis v. Guardian Loan Co., No. 3:19-cv-704 (CSH), 2019 WL 7882488, at *1 (D. Conn. Oct. 28, 2019) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "A motion for reconsideration is justified where the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Vasquez v. Rockland Cnty., No. 20-3684-pr, 2021 WL 5286676, at *2 (2d Cir. Nov. 15, 2021) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

---

[1] Motions for reconsideration "shall be filed within seven (7) days of the filing of the decision or order from which such relief is sought." D. Conn. L. Civ. R. 7(c). The Court's ruling on plaintiff's motions to compel and motion for sanctions was filed on February 28, 2022. (Dkt. #243.) Plaintiff notified the Court on March 16, 2022, that he had received only the text of the docket entry and not the ruling. (Dkt. #247.) The Honorable Michael P. Shea then instructed the Clerk to send a new copy of the ruling to plaintiff. (Dkt. #249.) Plaintiff represents that he received the Court's ruling on March 29, 2022. (Dkt. #252 at 1; dkt. #253 at 1.) Since plaintiff's motions for reconsideration were filed within one week of plaintiff's receipt of the Court's ruling, the Court will consider plaintiff's motions timely.

II. Discussion

1. Plaintiff's Clarification of the Relevance of the RT42 Screen

Initially, plaintiff moved to compel Request for Production No. 14, which sought a copy of his RT42 screen. (Dkt. #162 at 6-8.) Plaintiff's second motion to compel clarified that he sought an unredacted copy of his RT42 screen. (Dkt. #162 at 1.) Defendants represented that plaintiff had been provided a "copy of his RT42 record showing the locations of his inmate separation profiles and the facilities with his staff separation profiles," but inmate names, reasons for separation profiles, and sources of information were redacted because "[f]or safety and security reasons, [Department of Corrections ('DOC')] does not release this information to inmates." (Dkt. #182 at 2.)

The Court "agree[d] that the profiles are relevant to plaintiff's retaliation claim to a certain extent." (Dkt. #243 at 36.) But the Court was not certain "whether plaintiff is arguing that the defendants made false profiles as a pretext to transfer him out of state or whether defendants relied on previously made profiles as a pretext for sending him out of state." (Dkt. #243 at 37.) The Court denied plaintiff's motion to compel with leave for plaintiff to clarify the relevance.

In his recent notice to the Court, plaintiff explains the relevance of the RT42 screen and argues why each piece of information should be unredacted.[2] (Dkt. #251 at 1.)

Plaintiff's argument as to why the creation of the profiles is relevant blends into his argument that the profiles were fabricated. Plaintiff argues that his profiles were not the result of his violence toward other inmates or DOC staff but that the DOC and other inmates have fabricated claims against him resulting in the creation of false profiles, which defendants then relied upon as a basis for transferring plaintiff out of state. (Dkt. #251 at 2.) According to plaintiff, "[s]everal of the threat[] profiles were manufactured in 2018 by DOC Administrators to create a false pretext to transfer [plaintiff] out of state" relying on "third or fourth party reporting." (Dkt. #251 at 2.) Plaintiff alleges DOC Administrators relied on reports from other inmates that they knew to be false to "create a paper trail" to support the transfer. (Dkt. #251 at 2.) Plaintiff argues that defendants' reliance on plaintiff's violent nature as a reason to transfer him is pretextual in light of the falsity of the profiles. (Dkt. #251 at 2.)

---

[2] Plaintiff's notice is not styled as a motion but instead as a reply to this Court's order. However, plaintiff's notice is at bottom a motion for reconsideration in light of the clarification of the relevance, and the Court will interpret it as such.

Plaintiff also clarifies that he is not seeking a current list of profiles, but rather a list of profiles from the time of his transfer until he returned to Connecticut. (Dkt. #251 at 3.) Plaintiff argues that his profiles during this timeframe are relevant because changes in the profiles could mean plaintiff was no longer a housing difficulty, such that "defendants had no compelling need to keep the Plaintiff out of state and no [just] plausible defense of their actions." (Dkt. #251 at 3.)

Plaintiff also makes arguments related to the date on which the profiles were created and the locations of the profiles. However, defendants have produced a copy of the RT42 screen with the year the profile was created and the locations of the profiles. (Dkt. #182 at 2.) The Court will therefore not consider these arguments when deciding whether the unredacted RT42 screen should be produced as plaintiff already has this information.

In reviewing plaintiff's relevancy arguments, the Court notes that plaintiff does not argue that the <u>named</u> defendants created the false profiles. Plaintiff instead asserts that "DOC Administrators" manufactured several threat profiles in 2018 to create documentation to support plaintiff's transfer out of state, and defendants "have claimed that all of the Plaintiff's profiles were the result of his violence against others," and this is false. (Dkt. #251 at 2.)

5

That being said, the Court will again deny plaintiff's request for production of the unredacted RT42 screen. "Federal courts have repeatedly found good cause to limit discovery or disclosure of information implicating the safety and security of prisons." Gardner v. Univ. of Conn. Health Ctr., No. 3:12-CV-1168 (CSH), 2013 WL 6073430, at *2 (D. Conn. Nov. 18, 2013) (collecting cases). "Where otherwise discoverable information would pose a threat to the safety or security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur." Cooper v. Sely, No. 1:11-cv-005544-AWI-MJS (PC), 2013 WL 146428, at *3 (E.D. Cal. Jan. 14, 2013); *see also* Ayuso v. Butkiewieus, No. 17CV776(AWT), 2019 WL 1110794, at *5 (D. Conn. Mar. 11, 2019) (denying a motion to compel unredacted documents because the redactions were appropriate to prevent disclosure of other inmates' personal information). Other federal courts have noted "that information relating to other inmates and their housing assignments could potentially create security concerns," especially because prison administrators "have a duty . . . to protect prisoners from violence at the hands of other prisoners." Matson v. Hrabe, No. 11-3192-RDR, 2013 WL 4483000, at *5 (D. Kan. Aug. 20, 2013) (internal quotation marks and citation omitted).

The Court finds that the potential safety and security concerns that would stem from providing plaintiff with an unredacted copy of his RT42 screen outweigh the potential relevance. Defendants have represented in their memorandum in opposition to plaintiff's motion to compel that the DOC does not release the information contained within the RT42 screen to inmates because of safety and security concerns. (Dkt. #182 at 3.) Though "[t]he Court agrees that the profiles are relevant . . . to a certain extent," (dkt. #243 at 36), the DOC "is likely to have a better understanding of security risks than a prisoner." Lopez v. McEwan, No. 3:08-cv-0678 (JCH), 2010 WL 537744, at *3 (D. Conn. Feb. 12, 2020). Additionally, at least one court in this district has previously denied an inmate's motion to compel production of his complete profile screen. (See Coover v. Chapdelaine et al., No. 16-cv-13 (VLB), ECF No. 38.) Balancing the security risks of the disclosure of the unredacted profiles against the potential relevance to plaintiff's retaliatory transfer and deliberate indifference claims, the Court finds that the RT42 screen that has been produced already with the year of the profile and the location of the profile unredacted is sufficient.

The Court will therefore DENY plaintiff's motion for reconsideration (dkt. #251) as to the unredacted version of his RT42 screen.

2. <u>Plaintiff's Motion for Reconsideration Regarding Interrogatory No. 6 to Commissioner Quiros</u>

Plaintiff initially sought to compel Commissioner Quiros to revise or supplement his answer to Interrogatory No. 6. The interrogatory asked Commissioner Quiros to identify the regulations that he or the DOC had promulgated pursuant to Connecticut General Statutes § 18-86a and to provide copies of those regulations. (Dkt. #128 at 27.)

This Court denied plaintiff's motion to compel because Commissioner Quiros had represented that he is not aware of any regulations promulgated pursuant to Connecticut General Statutes § 18-86a. (Dkt. #243 at 6-7.)

Plaintiff argues that this Court erred in finding that Commissioner Quiros's answer was sufficient because a "[r]espondent to an interrogatory is required to make a reasonable inquiry into information available to him." (Dkt. #252 at 1.)

Plaintiff cites to <u>Essex Ins. Co. v. Interstate Fire & Safety, Co.</u>, 263 F.R.D. 72 (D. Conn. 2009) for the quote, "A part[y] answering interrogatories cannot limit his answers to his own knowledge and ignore information readily available to him or under his control." The Court was unable to find this quote in the cited case and believes the correct quote is, "The answering party cannot limit his answers to matters within his

own knowledge and ignore information immediately available to him or under his control," from Essex Builders Grp., Inc. v. Amerisure Ins. Co., 230 F.R.D. 682, 685 (M.D. Fla. 2005).

The citation to this case law does not change the Court's original conclusion. While it is true that a party answering an interrogatory has a duty to furnish information within that party's control, "a party cannot ordinarily be forced to prepare its opponent's case." 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2174 (2022). "Defendants are not required to do Plaintiff's legal research for [him]." Ferrucio v. Davis, No. 5:19-CV-346-BO, 2020 WL 6706354, at *2 (E.D.N.C. Nov. 13, 2020). "[C]ourts have routinely concluded that interrogatories which seek purely legal information are not permissible." Gilmore v. City of Minneapolis, No. 13-1019 (JRT/FLN), 2014 WL 4722488, at *6 (D. Minn. Sept. 22, 2014).

Plaintiff is essentially asking Commissioner Quiros to conduct legal research for him. Asking Commissioner Quiros to compile a list of regulations promulgated pursuant to a specific statute requires Commissioner Quiros to perform a legal analysis determining what the statute entails and which regulations may fit into that category. It is not as simple as having Commissioner Quiros review documents readily available to him.

Plaintiff also cites to Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982) to argue that Commissioner Quiros "has a mandated

9

duty to be aware of regulations governing the duties of his office." (Dkt. #252 at 2.) Harlow dealt with the application of qualified immunity to executive officials, and the Supreme Court of the United States held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. This standard for qualified immunity is inapposite to plaintiff's motion to compel.

Plaintiff has not demonstrated that the Court erred in denying his motion to compel Commissioner Quiros to revise or supplement his answer to Interrogatory No. 6. Therefore, plaintiff's motion for reconsideration as to Interrogatory No. 6 to Commissioner Quiros (dkt. #252) is DENIED.

3. Plaintiff's Motion for Reconsideration Regarding Prior Lawsuits

In his second motion to compel, plaintiff sought "[a] list of any and all state or Federal Civil Actions filed against any named Defendant, whether substantiated or not, that relates in any manner to the credibility of any named Defendant and/or that relates to any pattern of conduct similar to that alleged in this action, such as: retaliation; retaliatory transfers; failures to protect; failures to supervise," and a "[l]ist of

any state or federal action filed by any Conn. prisoner against any official of the state of Conn. or the state of Conn. itself regarding a Conn. prisoner transferred to Virginia pursuant to an Interstate Compact who alleged abuse or constitutional violations or bad acts of any kind while in Virginia custody, for the time period of 1999 to present." (Dkt. #162 at 35-36.)

This Court denied plaintiff's motion to compel with respect to these requests for production after balancing the interests under Rule 26(b)(1) of the Federal Rules of Civil Procedure, concluding that the publicly available nature of these documents meant plaintiff and defendants had equal access to these documents. (Dkt. #243 at 42-43.) Part of the Court's reasoning rested upon public access to the Court's filing website, CM/ECF, and plaintiff's ability to access legal databases such as Westlaw, as plaintiff has cited cases using Westlaw citations.

In his motion for reconsideration, plaintiff clarifies that "he has absolutely no access to electronic devices capable of accessing any website or data base." (Dkt. #253 at 1.) Plaintiff clarified that "[h]is only ability to cite case law comes from pre-existing publications compiled for pro se prisoner litigation." (Dkt. #253 at 1.) Additionally, plaintiff argues that the Inmate Legal Assistance Program ("ILAP") "will only provide case law based on a specific citation request," instead of conducting legal research on an inmate's behalf. (Dkt. #253

11

at 1.) Plaintiff has established that he does not have the same access to these documents as the defendants. Defendants did not file any response to plaintiff's motion for reconsideration and have made no effort to contradict plaintiff's assertion about his lack of access to legal databases such as Westlaw.

Plaintiff argues that because he does not have the same access to legal research as defendants, this Court should reconsider its previous ruling and grant the motion to compel. This Court previously stated, as plaintiff notes, that a list of prior cases is relevant. (Dkt. #243 at 42.) Defendants have made no showing of undue burden, hardship, or privilege. In their original objection to the motion to compel, defendants simply stated they do not have such lists of cases in their possession. (Dkt. #162 at 40.) Defendants did not file any response to plaintiff's motions for reconsideration, even though the Court extended the deadline for filing such a response. (*See* dkt. #261.)

The Court will therefore GRANT the motion for reconsideration and require production of a list of prior civil actions from the past three years against each named defendant alleging the same claims that remain in this case. (*See* dkt. #116 at 32.) However, the Court will DENY plaintiff's motion for reconsideration as to lists of prior civil cases that relate to the defendants' credibility and any state or federal action

filed by a Connecticut prisoner against any official of the State of Connecticut relating to an out of state transfer to Virginia. Plaintiff's clarification of his ability to conduct legal research has not changed the analysis the Court conducted with respect to these requests in its previous ruling.

III. Conclusion

For the reasons set forth above, the Court DENIES plaintiff's motion to compel the unredacted profile screens, DENIES plaintiff's motion for reconsideration of Interrogatory No. 6 to Commissioner Quiros, and GRANTS IN PART and DENIES IN PART plaintiff's motion for reconsideration as to the list of cases.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 23rd day of May, 2022 at Hartford, Connecticut.

/s/

Robert A. Richardson
United States Magistrate Judge